IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TIKA WAYCASTER,               )
                              )
            Plaintiff,        )
                              )
        v.                    )   1:17CV31
                              )
NANCY A. BERRYHILL,[1]        )
Acting Commissioner of Social Security, )
                              )
            Defendant.        )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tika Waycaster ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income Under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed her application for Social Security Income (SSI) on November 1, 2012, alleging a disability onset date of May 2, 2012. (Tr. at 158-163, 174.)[2] Her claim was denied initially (Tr. at 61-74, 93-96), and that determination was upheld on

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #7].

reconsideration (Tr. at 75-92, 101-10).  Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ").  (Tr. at 111-12.)  Plaintiff attended the subsequent hearing on August 12, 2015, along with her attorney, and an impartial vocational expert attended via telephone. (Tr. at 18, 34, 36.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act.  (Tr. at 29.)  On December 29, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review.  (Tr. at 1-6.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> lupus; fibromyalgia; obesity; lumbar radiculopathy; left foot impairment, status post tarsal tunnel decompression and partial plantar faciectomy; knee degenerative joint disease, status post right knee arthroscopic lateral release and patellar debridement for patellofemoral arthritis; restricted visual fields; mood disorder; and anxiety disorder.

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

(Tr. at 20.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 20-22.) As part of the determination at step three, the ALJ determined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence, or pace. The ALJ then assessed Plaintiff's RFC and determined that Plaintiff could perform light work but with a sit/stand option at thirty minute intervals; no concentrated exposure to hazards such as moving machinery and unprotected heights; unskilled work with no more than occasional public contact in a stable work environment; and infrequent and no commercial driving. (Tr. at 22.) The ALJ then determined at step five that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the national economy. (Tr. at 27.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 28.)

Plaintiff now challenges the ALJ's RFC assessment, contending that the ALJ failed to properly weigh the opinion of Plaintiff's treating psychiatrist, Dr. Barbara Lowry. (Pl.'s Br. [Doc. #13] at 2-8.) Specifically, Plaintiff contends that the ALJ erred in failing to give controlling weight to Dr. Lowry's opinion and, alternatively, erred by giving more weight to the opinions of State agency consultants than to the opinion of Dr. Lowry. After a thorough review of the record, the Court finds that neither contention merits remand.

Plaintiff first contends that the ALJ erred in failing to give controlling weight to Dr. Lowry's July 1, 2013 Medical Source Statement. In a recent decision, the Fourth Circuit reiterated that for claims, like Plaintiff's, that are filed before March 24, 2017, the ALJ evaluates medical opinion evidence in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c) and the "treating physician rule" embodied within the regulations. Brown v. Comm'r Soc. Sec., 873

F.3d 251, 255 (4th Cir. 2017). Under the regulations, "medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (citing 20 C.F.R. § 404.1527(a)(1)); see also 20 C.F.R. § 416.927(a)(1). While the regulations mandate that the ALJ evaluate each medical opinion presented to him, generally "more weight is given to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." Brown, 873 F.3d at 255 (quoting 20 C.F.R. § 404.1527(c)(1)); see also 20 C.F.R. § 416.927(c)(1). And, under what is commonly referred to as the "treating physician rule," the ALJ generally accords the greatest weight – controlling weight – to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in [the] case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. § 416.927(c)(2); see also Brown, 873 F.3d at 255; Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the ALJ utilizes all of the factors provided in 20 C.F.R. § 416.927(c)(2)-(c)(6) to determine what lesser

7

weight to accord the treating source opinion.[5] Those factors include (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. The regulations also reserve several issues to the Commissioner, "including whether a claimant's impairment matches a listed impairment, the claimant's RFC, and whether the claimant ultimately meets the statutory definition of disabled." Brown, 873 F.3d at 256 (citing 20 C.F.R. § 404.1527(d)); see also 20 C.F.R. § 416.927(d)(1)-(2). "Thus, for example, when a medical source renders an opinion that a claimant is 'disabled' or 'unable to work,' the ALJ will consider 'all of the medical findings and other evidence that support' the medical source's opinion, but will not necessarily make a favorable disability determination." Brown, 873 F.3d at 256 (citing 20 C.F.R. § 404.1527(d)(1)); see also 20 C.F.R. § 416.927(d)(1).

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 416.927(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that

---

[5] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920(c)(a). However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

8

the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

In this case, on July 1, 2013, Plaintiff's treating psychiatrist, Dr. Lowry, completed a Medical Source Statement regarding Plaintiff's ability to do work-related activities in light of Plaintiff's mental impairments. (Tr. 317-319.) Dr. Lowry checked off responses to prompts regarding Plaintiff's degree of limitation in ten areas. She indicated that Plaintiff has moderate restrictions in understanding, remembering, and carrying out simple instructions, as well as moderate restrictions in her ability to make judgments on simple work-related decisions. Dr. Lowry indicated that Plaintiff has marked restrictions in understanding, remembering, and carrying out complex instructions, as well as marked restrictions in her ability to make judgments on complex work-related decisions. In support of her assessment, Dr. Lowry noted that Plaintiff has "severe depression and anxiety with panic attacks." (Tr. at 317.) Dr. Lowry also indicated that Plaintiff has marked restrictions interacting appropriately with the public, supervisors, and co-workers, and in responding appropriately to work situations and changes in a routine work setting. (Tr. at 318.) Dr. Lowry again pointed to Plaintiff's "severe depression, anxiety, and panic" as the reason for Plaintiff's limitations. (Tr. at 318.) With regard to additional capabilities affected by Plaintiff's limitations, Dr. Lowry wrote that Plaintiff has "[p]oor attention and concentration, obsessional thinking about daily worries, lack of energy and motivation." (Tr. at 318.) Dr. Lowry included as support for her assessment -

9

"mental status exam reveals depressed mood, anxious, irritable, mood unstable, distracted." (Tr. at 318.)

The ALJ assigned "less weight" to Dr. Lowry's Medical Source Statement, finding that Dr. Lowry's opinion was not well supported by her treatment records and was inconsistent with the record as a whole. (Tr. at 21, 26.) The ALJ explained his rationale for the weight accorded to Dr. Lowry's medical opinion, stating that:

> [Dr. Lowry's] treatment records are not particularly thorough or detailed outside of listing the claimant's subjective complaints. . . .
>
> Dr. Lowry's form is also inconsistent with the thorough and detailed consultative psychological examination. . . .

(Tr. at 26.) The ALJ thus gave specific reasons for giving Dr. Lowry's form less weight: (1) Dr. Lowry's opinion was not supported by her treatment records, where the treatment records were not particularly thorough or detailed outside of listing Plaintiff's subjective complaints, and (2) Dr. Lowry's opinion was inconsistent with the record as a whole, particularly the consultative psychological examination. In addition, in evaluating Plaintiff's social functioning, the ALJ noted that

> Dr. Barbara Lowry checked on a medical source statement in July 2013 that the claimant has marked limitations interacting appropriately; however, that is not consistent with the record as a whole.

(Tr. at 21 (citing to consultative psychological examination).) Similarly, in evaluating concentration, persistence and pace, the ALJ noted that

> Dr. Lowry wrote on a medical source statement in July 2013 that the claimant has "poor attention and concentration" and is distractible; however, Dr. Lowry's treatment records do not show objective findings related to cognitive functioning.

(Tr. at 21.)

Plaintiff now challenges the ALJ's assignment of less than controlling weight to Dr. Lowry's Medical Source Statement. As noted above, the ALJ first found that Dr. Lowry's opinion was not supported by her treatment records. While Plaintiff apparently concedes that Dr. Lowry's treatment records are not particularly detailed, Plaintiff contends that Dr. Lowry's records consistently diagnose Plaintiff with Bipolar Disorder and Panic Disorder. (Pl.'s Br. [Doc. # 13] at 5.) However, a diagnosis alone does not reflect the extent of a plaintiff's functional limitations, and the fact that Dr. Lowry's treatment records consistently list the same diagnoses would not negate the ALJ's assessment regarding the substance of the treatment records. "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 416.927(c)(3). Here, the ALJ found that Dr. Lowry's opinion regarding Plaintiff's purported limitations was not sufficiently supported by findings in Dr. Lowry's treatment records. Instead, the ALJ explained that Dr. Lowry's treatment notes were more reflective of Plaintiff's subjective complaints:

> The records document many situational stressors, such as [claimant's] divorce and conflict with husband, issues with her father's illness, her relationship with her mother, and negative preoccupation with her health.

(Tr. at 21, 26.) The fact that a physician memorializes a claimant's subjective complaints in treatment records does not transform the complaints into objective medical findings. Craig, 76 F.3d at 590 n.2. On review of the record, the Court notes that Dr. Lowry's handwritten treatment records consist of fill-in-the blank assessments that refer to Plaintiff's subjective complaints, mood, and appearance, and as noted by the ALJ, these records are not particularly thorough, not particularly detailed, and contain primarily summaries of Plaintiff's issues related

to her divorce and her family interactions. (Tr. 262-73, 325-27, 402-13.) In addition, also as noted by the ALJ, there are no objective findings related to cognitive functioning.

Plaintiff asserts, however, that Dr. Lowry has "particularly strong insight into the nature and severity of Plaintiff's mental health conditions" because of the length of her treatment relationship with Plaintiff. (Pl.'s Br. [Doc. #13] at 5.) However, the ALJ acknowledged and considered the length of the treatment relationship, but also considered the problems with the treatment records and the lack of sufficient supporting information in the treatment records. These deficiencies are not negated by the length of the treatment relationship.

Further, the ALJ provided an additional rationale for the weight he accorded Dr. Lowry's medical opinion, determining that it was inconsistent with the record as a whole. The ALJ specifically pointed to the consultative examination and the consultative examiner's assessment of Plaintiff's functionality. The ALJ summarized the consultative examiner's findings regarding claimant's limitations as follows:

> The consultative examiner diagnosed depressive disorder NOS and anxiety disorder NOS, as well as ADHD per the claimant's report. ... The consultative examiner found that claimant showed an adequate ability to understand, retain and follow instructions. She demonstrated normal ability to concentrate long enough to perform simple, repetitive tasks. The consultative examiner opined that the claimant would likely encounter moderate difficulty tolerating the stress and pressures associate with day-to-day work activity. The consultative examiner opined that the claimant would likely encounter moderate difficulty relating effectively with coworkers and supervisors.

(Tr. at 27, 284-85.) The ALJ gave "some weight" to the consultative examiner's opinion.

In addition, the ALJ relied not simply on the consultative examiner's conclusions, but rather on the specific observations included in the report of the examination, and the

12

inconsistencies between Dr. Lowry's opinion and the observations at the consultative examination. For example, the ALJ noted that Dr. Lowry indicated on her Medical Source Statement that Plaintiff had marked limitations interacting appropriately, but the consultative examination indicated that claimant presented with no distress, "she had good eye contact and average energy," "[h]er mood was pleasant and affect was congruent with thought content, mood and situation." (Tr. at 21, 281.) Similarly, with regard to Plaintiff's concentration, persistence, and pace, the ALJ noted that Dr. Lowry indicated that Plaintiff had "poor attention and concentration and is distractible," but the ALJ further noted that

> [a]t the consultative psychological examination in February 2013, the claimant's concentration and comprehension abilities were adequate for evaluation purposes. She reported being able to complete a variety of activities of daily living. She was reasonably alert and oriented to time, place, self and situation. She was able to follow simple commands without significant comprehension problems. Her ability to recall aspects of her immediate, recent and remote history appeared to be grossly intact. She made no errors on serial 3s testing. She was able to count backwards by twos from 30 with no errors. The claimant was able to recall three of three words immediately and two of three words after a five and ten-minute delay.

(Tr. at 21-22, 283-84.)

The ALJ ultimately concluded that Dr. Lowry's form was inconsistent with the record of the consultative examination, and as support for that determination, the ALJ noted that at the consultative examination:

> claimant's overall grooming and appearance was within normal limits. She was casually dressed and appropriately groomed in blue jeans and a sweater. She did not show any noticeable disturbance in gait or posture. Her speech was clear and understandable. Eye contact was good. Energy level was average. The claimant's mood was pleasant and affect was congruent with thought content, mood and situation. She did not present in any clinically significant psychological distress. Concentration and comprehension abilities were adequate for evaluation purposes.

> On the consultative examination, [Plaintiff] became mildly dysphoric and somewhat anxious, but did not appear to be in any clinically significant psychological distress. Her thought process was linear without loosening of associations or flight of ideas. Thought content was negative for suicidal and homicidal ideations, ideas of reference and delusions. She did not present with any overt signs that would suggest an underlying psychotic process. She was reasonably alert and oriented to time, place, self and situation. She was able to follow simple commands without significant comprehension problems. Her ability to recall aspects of her immediate, recent and remote history were grossly intact. Insight and judgment appear to be poor. She made no errors on serial 3s. She counted backwards by 2s from 30 with no errors. The claimant was able to recall three of three words immediately and two of three words after five and ten-minute delay.

(Tr. at 26-27, 283-84.) The ALJ also specifically noted that the consultative examiner did not have sufficient information to make a diagnosis of a "specific mood, anxiety, psychotic or cognitive disorder," but did diagnose "depressive disorder NOS and anxiety disorder NOS, as well as ADHD per the claimant's report" based on his findings. (Tr. at 26-27, 284-85.)

Plaintiff does not challenge the ALJ's finding that Dr. Lowry's opinion is inconsistent with the consultative examination. Instead, Plaintiff attempts to negate the noted inconsistencies by discrediting the consultative exam as "not particularly reliable." (Pl.'s Br. [Doc. #13] at 6). Plaintiff notes that the consultative examiner examined Plaintiff only once and did not indicate whether he had access to Plaintiff's medical records.

Plaintiff's contentions, however, appear to bear on the nature and extent of the consultative examiner's relationship with Plaintiff and the amount of support underlying his opinions regarding Plaintiff's functionality, matters the ALJ considered in accordance with § 416.927(c). While the consultative examiner's report was the result of a one-time examination, the ALJ clearly took that into account but also found that the consultative examiner's assessment was "thorough and detailed." (Tr. at 281-285.) "The better an

14

explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 416.927(c)(3). In addition, Plaintiff has failed to indicate what relevant medical records the consultative examiner did not receive. The consultative examiner's report reflects that Plaintiff was referred for examination based on a history of "[b]ipolar, panic disorder, OCD, depression, [and] ADD." (Tr. at 281.) The consultative examiner's report also includes information regarding the medications Plaintiff was prescribed at the time, including Xanax, Adderall, Celexa, Seroquel, and Geodon. (Tr. at 281.) Plaintiff has failed to establish what "necessary background information" had not been provided. 20 C.F.R. § 416.917.

Ultimately, as set out in detail above, the ALJ expressly considered the evidence, recounted the results of the consultative examination, recounted the consultative examiner's findings, and determined the weight he deemed appropriate to accord the opinion evidence. (Tr. at 27.) The ALJ gave specific reasons for finding Dr. Lowry's Medical Source Statement lacking in support and inconsistent with the evidence in the record, including the consultative examiner's thorough examination. The ALJ found that the consultative examiner's assessment was better grounded in objective medical findings and that it more fully tied Plaintiff's impairments to her functional limitations. It is not the role of the Court to now re-weigh the § 416.927(c) factors and substitute its judgment for that of the ALJ. The ALJ's determination is supported by substantial evidence and was sufficiently explained. [6]

---

[6] Plaintiff also contends that the consultative examination was conducted by Alexander Lopez, who is "not a physician, psychiatrist or licensed psychologist." (Pl.'s Br. [Doc. #13] at 6.) However, the consultative examination is also signed by Patrick C. Quinn, Ph.D., and the ALJ noted Lopez's and Quinn's respective qualifications when he addressed the consultative examiner's assessment. (Tr. at 26.) Plaintiff does not appear to dispute that Dr. Quinn is an acceptable medical source under the applicable regulations for consideration of opinion evidence. See also 20 C.F.R. § 416.929g. Plaintiff points to no statutory provision, regulatory provision,

In her second argument, Plaintiff contends that the ALJ erred in assigning greater weight to the State agency consultants' opinions than to the opinion of Dr. Lowry. (Pl.'s Br. [Doc. #13] at 6.) As discussed above, opinions from treating sources are generally entitled to greater weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments." 20 C.F.R. § 416.927(c)(2). However, in some cases, "opinions from State agency . . . psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources," for example, when the state agency consultant's opinion is based on a review of the medical record that includes a report with more detailed information not considered by the treating source. SSR 96-6p.

In this case, the ALJ considered two State psychological consultants' reports when evaluating Plaintiff's claim: Dr. Ben Williams' March 3, 2013 opinion and Dr. Sharon Skoll's October 24, 2013 opinion. (Tr. at 61-73, 75-91.) The ALJ afforded their opinions "more weight" and indicated that the "residual functional capacity is consistent with their opinions that the claimant can do unskilled work in a stable work setting with occasional public contact." (Tr. at 27.) Plaintiff now contends that a proper weighing of the factors listed in 20 C.F.R. § 416.927 demonstrates that Dr. Lowry's opinion is entitled to greater weight than the opinions of the State agency consultants and that their opinions are not supported by substantial evidence because they "provide very minimal explanation for their findings and [their] findings are purely based on their review of the medical records in the exhibit file which

---

or judicial decision that would preclude the ALJ from considering the consultative examination in this case. As discussed above, to the extent that Plaintiff is essentially asking the Court to re-weigh the evidence, the Court concludes that the ALJ's decision is supported by substantial evidence and the Court will not substitute its judgment for that of the ALJ.

do not even include the most recent treatment notes from Dr. Lowry." (Pl.'s Br. [Doc. #13] at 7.)

To the extent that Plaintiff invites the Court to re-weigh the factors the ALJ considered when assigning weight to various medical opinions, the Court declines to do so. See Mastro, 270 F.3d at 176 ("In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." (internal brackets and quotation marks omitted)). As discussed above, the ALJ weighed the relevant factors and provided legally sufficient reasons for discounting Dr. Lowry's opinion. The ALJ found Dr. Lowry's medical opinion both deficient in support and inconsistent with the record as a whole, entitling the ALJ to accord not only less than controlling weight to Dr. Lowry's Medical Source Statement but to accord more weight to the state agency consultants' opinions, which the ALJ found more consistent with the record as a whole.

The State consultants' opinions are set out in detail and include specific reasons and bases for the opinions, based on review of Plaintiff's medical records and other information in the record. The State consultants found Plaintiff's limitations resulting from mental impairments to range from mild to moderate, which is consistent with the consultative examination. (Tr. at 61-73, 75-91.) Specifically, both Williams and Skoll noted that "[c]laimant is able to interact with others appropriately with occasional general public contact," "[c]laimant is able to maintain concentration and persistence limitations to perform simple work functions," that she is moderately limited in her ability to carry out detailed instructions and in her ability to "maintain attention and concentration for extended periods," and that she is

17

moderately limited in interacting with the general public. (Tr. at 69-71, 86-88.) The basis for the determination is set out in narrative form and includes specific reference to functional limitations. (Tr. at 82-83, 86-87.) These conclusions are also consistent with the findings of the consultative examiner that Plaintiff "shows an adequate ability to understand, retain, and follow instructions," and that "she would likely encounter mild to moderate difficulty relating effectively with coworkers and supervisors." (Tr. at 27, 285.)

Plaintiff contends, however, that the State psychiatric consultants' opinions are not supported by substantial evidence because they do not consider Dr. Lowry's most recent treatment notes. (Pl.'s Br. [Doc. #13] at 7-8.) Dr. Skoll's opinion, however, did consider Dr. Lowry's July 1, 2013 Medical Source Statement. (Tr. 75-91.) Neither Plaintiff nor the treatment record suggest any subsequent changes in Plaintiff's mental condition that would render the State agency consultants' opinions unsupported. (Tr. at 401-413.) In addition, as noted above, the ALJ considered Dr. Lowry's later treatment records, including those subsequent to Dr. Skoll's assessment, and found as to all of Dr. Lowry's treatment records that the records were not particularly thorough or detailed outside of listing Plaintiff's subjective complaints. (Tr. at 26 (citing Exhibit 21F), 401-13.) Plaintiff has pointed to no basis to conclude that the lack of Dr. Lowry's most recent treatment notes rendered the state consultants' opinions unsupported.

Thus, substantial evidence supports the ALJ's assignment of weight to the State consultants' opinions, and the Court will not re-weigh the opinion evidence in this case.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc.

#11] should be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be GRANTED, and that this action be DISMSSED with prejudice.

This, the 17th day of November, 2017.

                                                        /s/ Joi Elizabeth Peake
                                               United States Magistrate Judge